# In the United States Court of Federal Claims

No. 18-217C
Filed: January 3, 2019

```
* * * * * * * * * * * * * * *   *
                                *
WILLIAM PEREZ,                  *
                                *
            Plaintiff,          *       Military Pay Case; Motion to
                                *       Dismiss; Statute of Limitations;
      v.                        *       Appellate Review Leave;
                                *       Restoration to Active Duty.
UNITED STATES,                  *
                                *
            Defendant.          *
                                *
* * * * * * * * * * * * * * *   *
```

**Charles W. Gittins**, Law Offices of Charles W. Gittins, P.C., Middletown, VA, for plaintiff.

**John S. Groat**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were **Steven J. Gillingham**, Assistant Director, **Robert E. Kirschman, Jr.**, Director, and **Joseph J. Hunt**, Assistant Attorney General, Department of Justice, Civil Division. Of counsel were **Adam E. Frey**, Civilian, United States Air Force, and **Lt. Col. Charles J. Gartland**, United States Air Force.

## O P I N I O N

<u>**HORN, J.**</u>

Plaintiff, William Perez, is a former, active duty Staff Sergeant in the United States Air Force who filed the above-captioned case seeking back-pay for the time he spent on unpaid confinement and on unpaid appellate leave, as well as back-pay stemming from an allegedly, wrongful discharge. Plaintiff was sentenced and charged by a general court-martial to one-year confinement and a bad-conduct discharge while on active duty. The Air Force, however, later dismissed plaintiff's court-martial sentence and charges, and ordered that plaintiff be restored "[a]ll rights, privileges and property" previously denied to him. Plaintiff alleges that following the reversal of his court-martial conviction, the Air Force never paid plaintiff the monies allegedly due to him and also wrongfully discharged plaintiff with a "bad-conduct" discharge. Defendant, the United States, has now moved to dismiss plaintiff's complaint, filed on February 13, 2018, as untimely because, allegedly, it was filed outside of the six-year statute of limitations contained in 28 U.S.C. § 2501 (2012). Defendant also moved to dismiss for lack of jurisdiction plaintiff's request to be restored to active duty.

# BACKGROUND

## Appellate review leave

When an accused servicemember is sentenced by a court-martial to a bad-conduct discharge, the court-martial sentence is subject to appellate review by the applicable, military branch, Court of Criminal Appeals. See 10 U.S.C. § 866(b) (2006)[1] ("The Judge Advocate General shall refer to a Court of Criminal Appeals the record in each case of trial by court-martial—(1) in which the sentence, as approved, extends to . . . bad-conduct discharge . . . ."). The accused servicemember "may be required to begin such leave on the date on which the sentence is approved . . . or at any time after such date," and such "leave may be continued until the date on which action under this subchapter is completed or may be terminated at any earlier time." 10 U.S.C. § 876(a) (2006). If the servicemember does not have sufficient accrued leave to cover the days of his or her appellate review leave, then the appellate review leave "shall be charged as excess leave." 10 U.S.C. § 706(a) (2006); see also Department of Defense Financial Management Regulation (DODFMR), Vol. 7A Ch. 1, § 010301.F.1 (Mar. 2009).

If the court-martial sentence of a bad-conduct discharge is "set aside or disapproved," "all rights, privileges, and property affected by an executed part of a court-martial sentence . . . except an executed dismissal or discharge, shall be restored." 10 U.S.C. § 875(a) (2006). In addition, "[i]f a previously executed sentence of dishonorable or bad-conduct discharge is not imposed on a new trial, the Secretary concerned shall substitute therefor a form of discharge authorized for administrative issuance unless the accused is to serve out the remainder of his enlistment." 10 U.S.C. § 875(b) (2006). The law, as codified in 10 U.S.C. § 707 (2006), and implemented by the Department of Defense in DODFMR, Vol. 7A Ch. 1, § 010301.F, also requires that, when a servicemember's bad-conduct discharge has been "set aside or disapproved," the servicemember be paid for time spent on excess leave. See 10 U.S.C. § 707(a) (noting that a servicemember "whose sentence by court-martial to a . . . bad-conduct discharge is set aside or disapproved . . . shall be paid . . . for the period of leave charged as excess leave"). Payment for excess leave is "reduced by the total amount of his income from wages, salaries, tips, other personal service income, unemployment compensation, and public assistance benefits from any Government agency during the period he is deemed to have accrued pay and allowances." Id. at § 707(b); see also DODFMR at § 010301.F.2.a (Mar. 2009). In order to compute the amount of pay due and owing to a servicemember, the military requires a servicemember to submit "information as to sources and amounts of income received by the member during periods of required appellate leave," which "should include, at a minimum, copies of all pertinent income tax returns, employer statements of income earned from wages, salaries, tips, and documentation of other personal service income." DODFMR at § 010301.F.3 (Mar. 2009).

---

[1] The court cites to the versions of the United States Code and the Department of Defense Financial Management Regulation (DODFMR) in effect at the time of plaintiff's appellate review leave in the above-captioned case.

Notably, "[p]ay will be computed only on the basis of a written record." Id. Payment for excess leave "shall be made" to the servicemember as follows:

> (A) Payment shall be made within 60 days from the date of the order setting aside or disapproving the sentence by court-martial to a dismissal or a dishonorable or bad-conduct discharge if no rehearing or new trial has been ordered.
>
> (B) Payment shall be made within 180 days from the date of the order setting aside or disapproving the sentence by court-martial to a dismissal or a dishonorable or bad-conduct discharge if a rehearing or new trial has been ordered but charges have not been referred to a rehearing or new trial within 120 days from the date of that order.
>
> (C) If a rehearing or new trial has been ordered and a dismissal or a dishonorable or bad-conduct discharge is not included in the result of such rehearing or new trial, payment shall be made within 60 days of the date of the announcement of the result of such rehearing or new trial.
>
> (D) If a rehearing or new trial has been ordered and a dismissal or a dishonorable or bad-conduct discharge is included in the result of such rehearing or new trial, but such dismissal or discharge is not later executed, payment shall be made within 60 days of the date of the order which set aside, disapproved, or otherwise vacated such dismissal or discharge.

10 U.S.C. § 707(b)(2); see also DODFMR at § 010301.F.2.b (Mar. 2009).

> The statute also provides:
>
> If a member is entitled to be paid under this section but fails to provide sufficient information in a timely manner regarding his income when such information is requested . . . the periods of time described in paragraph (2) shall be extended until 30 days after the date on which the member provides the information requested.

10 U.S.C. § 707(b)(3); see also DODFMR at § 010301.F.2.b.5 ("If a member who is entitled to be paid under this section fails to provide sufficient information in a timely manner regarding his/her income when such information is requested under subparagraph 010301.F.3, then the periods of time prescribed in this paragraph shall be extended until 30 days after the date on which the member provides the requested information."). Based on the above quoted statutory provision and DODFMR, the military will request from the servicemember the necessary income documentation. The servicemember's obligation to provide his or her income documentation to the military in a "timely manner" is triggered "when such information is requested" by the military. See 10 U.S.C. § 707(b)(3).

**Plaintiff's service in the Air Force**

Plaintiff initially enlisted as an active duty member in the United States Air Force on January 19, 1995. On August 28, 1998, plaintiff re-enlisted for an active duty a term of four years. Plaintiff re-enlisted for his third term of active duty for a term of six years on August 23, 2002.

In 2004, plaintiff had achieved the rank of Staff Sergeant and was serving out his third re-enlistment term on active duty, set to expire in August of 2008. Also in 2004, plaintiff was tried by a general court-martial composed of officer members at Moody Air Force Base, Georgia, on charges of assault and sodomy of his then two minor sisters-in-law, M.R.G. and E.M.G.[2] Plaintiff was found guilty of sodomy of M.R.G., and of assault with intent to commit sodomy of E.M.G., in violation of Article 125 and 134 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 925, 934 (2000). On July 2, 2004, plaintiff was sentenced to "[r]eduction to the grade of airman first class, confinement for 1 year, and bad conduct discharge."

On November 4, 2004, the convening authority[3] issued General Court-Martial Order (GCMO) No. 1, in which the convening authority approved the July 2, 2004 findings and sentence of the general court-martial against plaintiff for assault and sodomy of M.R.G. and E.M.G. The convening authority also stated in GCMO No. 1 that "upon completion of the sentence to confinement, AIRMAN FIRST CLASS WILLIAM PEREZ, JR., will be required, under Article 76a, UCMJ, to take leave pending completion of appellate review of the conviction." (capitalization in original). On April 16, 2005, following plaintiff's completion of his confinement sentence, the Air Force placed plaintiff on unpaid appellate review leave while plaintiff's conviction and sentence were being reviewed by the Air Force. As noted in the form titled "Duty Status Change" dated April 16, 2005, which was attached to defendant's motion to dismiss, plaintiff was confined "FROM 2 Jul 2004 THRU 15 Apr 2005," for a total of "284" days. (capitalization in original).

Although no specific date was provided in plaintiff's complaint, plaintiff alleges that subsequent to the general court-martial's July 2, 2004 sentence, and "[d]uring the course of appellate review, M.R.G. sent an unsolicited letter to plaintiff's appellate defense counsel outlining the nature of her perjury, the reasons therefore, and describing the subornation by her mother." Plaintiff states in his complaint that, on April 12, 2006, plaintiff filed a "request for a new trial" with the United States Air Force Court of Criminal Appeals, "based on fraud on the court and evidence discovered after trial that would, if had been available at trial, led to a different result." The United States Air Force Court of Criminal

---

[2] Plaintiff's complaint only provides the initials of plaintiff's two then minor sisters-in-law.

[3] See 10 U.S.C. § 860(c)(2)(A)-(B) (2012) ("Action on the sentence of a court-martial shall be taken by the convening authority or by another person authorized to act under this section. . . . [T]he convening authority or another person authorized to act under this section may approve, disapprove, commute, or suspend the sentence of the court-martial in whole or in part.").

Appeals ordered a post-trial fact finding hearing by a military judge to hear testimony from M.R.G. and several other witnesses. The military judge presiding over the fact-finding hearing collected evidence and found the following:

> Based on the evidence presented, my evaluation of the credibility of the witnesses, and the totality of the circumstances, the court finds that the trial testimony of MRG was untruthful and that her subsequent recantation is true. Without being able to personally observe the witness, the court is reluctant to make the same finding regarding EMG's testimony, although circumstantial evidence strongly suggests that her recantation is true as well.

On March 17, 2008, the United States Air Force Court of Criminal Appeals, after review of the military judge's findings and conclusions, granted plaintiff's petition for a new trial. The United States Air Force Court of Criminal Appeals stated that "grounds for a new trial exist" because of "newly discovered evidence and fraud on the court-martial," and found the following:

> (1) the evidence that M.R.G. and E.M.G were committing perjury by fabricating their allegations against the appellant/petitioner was not discovered until well after completion of the trial;
> (2) this evidence could not have been discovered at the time of trial because the girls were still under the control and influence of their mother, who was essentially directing their actions; and
> (3) given that the testimony of the two girls was the primary evidence against the appellant/petitioner at trial, the newly discovered evidence showing the stories of the girls were fabricated would have probably produced a substantially more favorable result for the accused.

On August 23, 2008, plaintiff's six-year active duty enlistment term was set to expire, based on the six-year reenlistment term of service in plaintiff's August 23, 2002 reenlistment document. Plaintiff, however, was continued on unpaid leave because plaintiff's case had been remanded for a new trial. On July 31, 2009, the convening authority for plaintiff's general court-martial issued GCMO No. 13, which was attached to defendant's motion to dismiss. GCMO No. 13 stated that, although "the Air Force Court of Criminal Appeals has ordered a new trial," a "new trial was found impractical," and that, "[p]ursuant to the authority of Rule of Courts-Martial (R.C.M.) 1107(e), the charges are dismissed without prejudice. All rights, privileges and property of which the accused was deprived by virtue of the findings of guilty and the sentence imposed will be restored . . . ."

For reasons unexplained in the record before the court, following the July 31, 2009 dismissal of charges and restoration of rights and privileges, the Air Force did not attempt to discharge plaintiff until June 18, 2013, did not pay plaintiff for the time he had spent on unpaid confinement and unpaid appellate review leave, and did not request from plaintiff any income information, such as plaintiff's income tax returns, employer statements, and

documentation of other personal service income, in order to determine the amount of pay due to plaintiff. In fact, for reasons unexplained in the record before the court, based on the June 18, 2013 DD Form 214, the Air Force delayed approximately four years before preparing and issuing plaintiff's actual discharge papers on June 18, 2013. The record before the court does not address plaintiff's service status following the July 31, 2009 dismissal of charges by the Air Force. According to plaintiff's complaint:

> Plaintiff was never restored, nor was he paid the pay due as a result of his unpaid confinement as was required by law and the Convening Authority's order and plaintiff remained on unpaid appellate leave (without payment as required by 10 U.S.C. [§] 707) until his final discharge, effected by DD-214, which was prepared for delivery on June 18, 2013.

Based on the record before the court, it appears that, on September 20, 2012, a "Request and Authorization for Separation" form, which was attached to plaintiff's complaint, was completed with respect to the plaintiff by the Air Force.[4] The September 20, 2012 Request and Authorization for Separation form contains the electronic signatures of "the Orders Authenticating Official," who is listed as United States Air Force Master Sergeant Donovan H. Thomas, Superintendent, AFPC Retirements and Separations Branch, as well as the "Orders Issuing/Approving Official," who is listed as United States Air Force Staff Sergeant Aidaliz Laguex. The September 20, 2012 Request and Authorization for Separation form states that plaintiff held a grade of "SSG [Staff Sergeant]" and that the "type of separation" was to be "discharge," with an included retroactive, effective date of July 31, 2009. The September 20, 2012 Request and Authorization for Separation form states that plaintiff's "character of service" was "honorable." The Request and Authorization for Separation form also has boxes checked for "certificate issued:" for a DD Form 256 AF, titled "Honorable Discharge Certificate," as well as a DD Form 214, titled "Certificate of Release or Discharge from Active Duty." The September 20, 2012 Request and Authorization for Separation form does not provide any specificity regarding to whom the DD Form 256 AF and DD Form 214 were issued and does not contain copies of these two forms. The Request and Authorization for Separation form also does not give any indication that plaintiff reviewed or received a copy of the Request and Authorization for Separation form, a DD Form 256 AF, or the DD Form 214 referred to in the Request and Authorization for Separation form at the time the Request and Authorization for Separation form was issued. The September 20, 2012 Request and Authorization for Separation form does not contain plaintiff's signature, nor does it contain a signature line for plaintiff to sign.

---

[4] The September 20, 2012 Request and Authorization for Separation form issued by the Air Force to plaintiff, as well as plaintiff's June 18, 2013 DD Form 214, titled "Certificate of Release or Discharge from Active Duty," are standardized, military forms which display typed-in written text in the "All Caps" format with boxes to be filled in applicable to the particular individual referenced. In this Opinion, direct quotes from the September 20, 2012 Request and Authorization for Separation form and the June 18, 2013 DD Form 214 are not displayed in "All Caps," but, instead, conform to general standards of capitalization.

The record reflects that the Air Force did not prepare or issue a DD Form 214 on the date of discharge listed on the DD Form 214, July 31, 2009, in the record before the court, but included a backdated discharge date of July 31, 2009 when it issued the DD Form 214 on June 18, 2013. The backdated DD Form 214 also stated that plaintiff's "character of service" was "bad conduct." The record before the court also contains no explanation as to the approximate nine-month delay from when the Air Force prepared the September 20, 2012 Request and Authorization for Separation form to when the Air Force prepared plaintiff's June 18, 2013 DD Form 214, with the retroactive July 31, 2009 date. Plaintiff alleges that he never received notice of the June 18, 2013 DD Form 214, which was prepared for plaintiff regarding plaintiff's service, and that plaintiff was not aware that the DD Form 214 existed until August 13, 2017, when he, for an unspecified purpose, "downloaded [his] military records" from the "Defense Personnel Records Information Retrieval System." Plaintiff states, in the May 22, 2018 declaration attached to his response to defendant's motion to dismiss, that "I was never contacted by the Air Force and advised that a DD-214 had been prepared and I never received a DD-214. I believed I could still be on appellate review leave/active duty status in the United States Air Force awaiting a final disposition." Plaintiff also attached the June 18, 2013 DD Form 214 to his complaint in the above-captioned case. According to plaintiff's complaint, the DD Form 214 was completed in plaintiff's name, without his involvement or knowledge. Plaintiff's complaint further states:

> Plaintiff was never restored, nor was he paid the pay due as a result of his unpaid confinement as was required by law and the Convening Authority's order and plaintiff remained on unpaid appellate leave . . . until his final discharge, effected by DD-214, which was prepared for delivery on June 18, 2013.

The June 18, 2013 DD Form 214 was signed by Nancy L. Schmitz, United States Air Force Contractor, Separations Documentation Technician.[5] The June 18, 2013 DD Form 214, unlike the September 20, 2012 Request and Authorization for Separation form, contains a section which appears to be a designated section for plaintiff to sign, titled "Member Signature." The section, however, was filled in to indicate that "Member not available to sign." The June 18, 2013 DD Form 214 also provides information regarding plaintiff's service in the Air Force, stating that plaintiff's "primary specialty" was "Aviation Resource MGT Craftsman," for "9 years and 3 months." In addition, the June 18, 2013 DD Form 214 lists plaintiff's "decorations, medals, badges, citations and campaign ribbons awarded or authorized," which included:

> AF Achievement Medal, AF Outstanding Unit Award with 1 oak leaf cluster, AF Good Conduct Medal with 1 oak leaf cluster, National Defense Service Medal with 1 service star, Afghanistan Campaign Medal with 1 service star, Global War On Terrorism Expeditionary Medal, //SEE REMARKS//

---

[5] If Ms. Schmitz was a contractor, it is not clear from the record whether she had authority to sign a discharge document.

(capitalization in original). In a section titled "Remarks," the June 18, 2013 DD Form 214 states in relevant part, "[m]ember has completed first full term of service. Continuous Honorable Active Military Service from 19 January 1995 to 22 August 2002. Appellate Leave 1567 Days (From 16 April 2005 to 31 July 2009. [sic]" Notably, the June 18, 2013 DD Form 214 states that plaintiff received a "bad conduct" discharge to be effective July 31, 2009 and that the "reason for separation" was "court martial (other)." The June 18, 2013 DD Form 214 then states that the "separation authority" was "GCMO # 1, 4 Nov 2004" and that the "dates of time lost during this period" were "20040702 - 20050415." (capitalization in original). No mention of the restoration of plaintiff's rights ordered by July 31, 2009 GCMO No. 13 appears in the June 18, 2013 DD Form 214.

Based on the record before the court, the Air Force appears to have provided plaintiff with military health care for some time following his July 31, 2009 court-martial reversal. According to a May 18, 2018 letter filed in the record before the court from the Manpower Data Center within the Department of Defense to plaintiff, plaintiff seems to have remained enrolled in TRICARE, the military's program for providing health care benefits to servicemembers, until October 20, 2012. According to the May 18, 2018 letter, "[m]ilitary health care benefits are provided to active duty, retired and Reserve Service members, as well as authorized family members."[6] The May 18, 2018 letter notes that plaintiff was first enrolled in TRICARE on January 19, 1995, the same day when plaintiff first enlisted in active duty service in the Air Force. The letter also notes that plaintiff's enrollment ended on October 20, 2012. The letter, however, does not explain why plaintiff's enrollment ended on October 20, 2012. The May 18, 2018 letter also displays the enrollment period in TRICARE for five other individuals with the surname Perez, who, although not stated in the letter as such, may be family members of the plaintiff. The date of enrollment varies for these five individuals, however, a common termination date from TRICARE of October 20, 2012 is included in the May 18, 2018 letter. The most recent enrollee in TRICARE was Daniel J. Perez, who was first enrolled on October 11, 2009, more than two months after plaintiff's bad-conduct discharge was reversed on July 31, 2009 by GCMO No. 13.

### Procedural history

On February 13, 2018, plaintiff filed a complaint in the above-captioned case in this court, seeking "back-pay, reinstatement and collateral injunctive relief." Plaintiff alleges that the "money mandating statutes undergirding Tucker Act jurisdiction" of plaintiff's complaint are 10 U.S.C. § 707, which requires payment upon reversal of certain court-martial sentences, and "the Military Pay Act," 37 U.S.C. § 204(a) (2006), which entitles members of the Armed Forces to pay while on active duty status. Plaintiff's

---

[6] Judges of this court have stated that a "service member on appellate leave is entitled to military benefits such as health care . . . but not military pay and allowances." See Johnson v. United States, 41 Fed. Cl. 190, 192 n.1 (1998); see also Combs v. United States, 50 Fed. Cl. 592, 607 (2001) (quoting Johnson v. United States, 41 Fed. Cl. at 192 n.1).

complaint contains five counts, which stem in large part from plaintiff's allegations that, despite the reversal of plaintiff's court martial conviction and that "[a]ll rights, privileges and property of which the accused was deprived by virtue of the findings of guilty and the sentence imposed will be restored," the Air Force did not provide to plaintiff "the pay and allowances" withheld from him while on unpaid confinement and unpaid appellate review leave, and that, on June 18, 2013, the Air Force "wrongfully discharged plaintiff with a Bad Conduct Discharge," rather than an honorable discharge, as directed by GCMO No. 13.

The first count in plaintiff's complaint alleges that:

The AFBCMR [Air Force Board for Correction of Military Records] acted arbitrarily, capriciously and contrary to law and regulation where [sic] it imposed a duty on plaintiff to first submit plaintiff's Application for Correction of Military Record to the Air Force Discharge Review Board, which was statutorily prohibited from considering a discharge awarded at a general court-martial and where [sic] the AFDRB [Air Force Discharge Review Board] has no jurisdiction or authority to consider or decide plaintiff's claims for back-pay, reinstatement and retirement.

In a footnote in its motion to dismiss plaintiff's complaint, defendant references an Application for Correction of Military Record by him to the Air Force Discharge Review Board and states:

Following the filing of Mr. Perez's compliant [sic], the Air Force Board for Correction of Military Records advised us that it has reconsidered its prior refusal to consider Mr. Perez's application case and is prepared to reopen his application and consider the matter.

No evidence has been provided to the court regarding plaintiff's Application or whether the Air Force Board for Correction of Military Records has reopened or acted upon such an Application by plaintiff.

Plaintiff's second count alleges that the Air Force acted arbitrarily and capriciously and in contravention to "Article 75, UCMJ, 10 U.S.C. § 875" when it failed to "carry out" GCMO No. 13 to "dismiss charges and restore plaintiff to [a]ll rights privileges and property of which [he] was deprived by virtue of the findings of guilty and the sentence imposed." (alterations in original).

Plaintiff's third count alleges that the Air Force's June 18, 2013 discharge of plaintiff was arbitrary, capricious, and contrary to law. According to plaintiff, he "had been on active duty for 18 years and 6 months," as of June 18, 2013, and, thus, that "10 U.S.C. § 1176, required that he be retained on active duty until he qualified for retirement at 20 years active duty."

Plaintiff's fourth count alleges that the Air Force acted arbitrarily, capriciously and contrary to law when, on June 18, 2013, the Air Force prepared the June 18, 2013 DD-214 Form

> with material factual errors unsupported by law, purported to effect plaintiff's discharge with a punitive "Bad Conduct" discharge that had not been approved and ordered executed by any proper authority as is required by 10 U.S.C. § 866 and then purported to actually effect plaintiff's discharge without a final accounting of pay and required clearing procedures.

Plaintiff's fourth count also alleges that, on June 18, 2013, the Air Force acted arbitrarily, capriciously and contrary to law when it purported to discharge plaintiff "without performing a final accounting of pay and delivering same to plaintiff" pursuant to 10 U.S.C. § 1168(a) (2012).

> Plaintiff's fifth count alleges that the Air Force acted

> fraudulently, arbitrarily, capriciously and contrary to law and regulation when, on June 18, 2013, the Air Force prepared a DD-214 that [almost four years later] purported to discharge plaintiff [retroactively] on July 31, 2009, which improperly and materially affected plaintiff's rights to veteran's benefits and other emoluments of military service and, which ultimately, was false.

Plaintiff's complaint requests that the court "[o]rder that plaintiff's discharge be set aside" and that "plaintiff be immediately restored to active duty in the United States Air Force pending final decision in this case." In addition, plaintiff's complaint further requests that the court "[r]emand to the Air Force Secretary and Order the Secretary acting through the Air Force Board for Correction of Military Records to make the following corrections to plaintiff's military record," including:

> a) [R]estoration to active duty and return of all rights, privileges and property to which he was denied by the findings of guilty and sentence as a result of General Court Martial Order No. 13 of July 31, 2009;
> b) Order plaintiff be paid back-pay and allowanced [sic] required by law as a result of the dismissal of charges by the Air Force Court of Criminal Appeals and order of the Convening Authority within 60 days as is required by law;
> c) Ascertain the highest grade plaintiff would have achieved had he not been arbitrarily and capriciously denied restoration and return to active duty on or about July 31, 2009 and the likely effective dates of those promotions;
> d) Ascertain, with the Assistance of the Defense Finance and Accounting Office the amount of back pay allowances and entitlements plaintiff is entitled to as a result of 10 U.S.C. § 875 and 10 U.S.C. § 707 in the rank

and grade he should have achieved according to the AFBCMR had he been
restored as required by law and GCMO #13;

e) Order plaintiffs [sic] retirement upon 20 years of active duty service in
light of the provisions of 10 U.S.C. § 1176. [sic]

f) Order that the Court shall retain jurisdiction of this matter during the
remand and the Secretary shall report back progress on the remand in
accordance with RCFC [Rules of the United States Court of Federal Claims]
52.2(b)[.]

Finally, plaintiff's complaint requests that the court award "Attorney's Fees and Costs,"
judgment in plaintiff's favor, and "such additional relief as may be required."

Defendant filed a motion to dismiss plaintiff's complaint pursuant to RCFC 12(b)(1)
(2018), because, according to defendant, plaintiff's "monetary claims" are time-barred
under the six-year statute of limitations contained in 28 U.S.C. § 2501. Defendant also
argues in its motion to dismiss that this court lacks subject matter jurisdiction over
plaintiff's "request to restore him to active duty."

Plaintiff filed a response to defendant's motion to dismiss, in which he argues that
his request for active duty restoration is collateral to plaintiff's "well-pleaded" claim for
"back-pay," and, thus, that this court has jurisdiction over plaintiff's active duty restoration
request. Plaintiff also argues that his "[c]omplaint was filed within the 6 year statute of
limitation [sic]," and not time-barred under 28 U.S.C. § 2501. Thereafter, defendant filed
a reply in support of its motion to dismiss, reiterating that plaintiff's active duty restoration
request is "not within this court's jurisdiction" because it is a request for equitable relief
that is not collateral to plaintiff's claims and that plaintiff's complaint is time-barred by the
court's general six-year statute of limitations contained in 28 U.S.C. § 2501. On November
21, 2018, the parties simultaneously filed supplemental briefing addressing DODFMR,
Vol. 7A Ch. 1, § 010301.F and its applicability to the timeliness of plaintiff's monetary
claim for back-pay for time spent on unpaid confinement and unpaid appellate review
leave.

## DISCUSSION

"Subject-matter jurisdiction may be challenged at any time by the parties or by the
court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing
Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)); see also Int'l
Elec. Tech. Corp. v. Hughes Aircraft Co., 476 F.3d 1329, 1330 (Fed. Cir. 2007). The
Tucker Act, 28 U.S.C. § 1491 (2012), grants jurisdiction to this court as follows:

The United States Court of Federal Claims shall have jurisdiction to render
judgment upon any claim against the United States founded either upon the
Constitution, or any Act of Congress or any regulation of an executive
department, or upon any express or implied contract with the United States,
or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); see also United States v. Mitchell, 463 U.S. 206, 216 (1983); Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage

sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); see also N.Y. & Presbyterian Hosp., 881 F.3d at 881; Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (noting that the absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act"); Price v. United States, 133 Fed. Cl. 128, 130 (2017); Peoples v. United States, 87 Fed. Cl. 553, 565-66 (2009).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); see also Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir. 2016) ("In deciding a motion to dismiss, a court is required to accept as true all factual allegations pleaded." (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009))); Fid. & Guar. Ins. Underwriters, Inc. v. United States, 805 F.3d 1082, 1084 (Fed. Cir. 2015); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the

grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2018); Fed. R. Civ. P. 8(a)(1), (2) (2019); see also Ashcroft v. Iqbal, 556 U.S. at 677-78 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

## I.   Timeliness of plaintiff's claim for back-pay.

Defendant seeks to dismiss plaintiff's claim for back-pay stemming from plaintiff's time spent on unpaid confinement and unpaid appellate review leave as time-barred under the six-year statute of limitations contained in 28 U.S.C. § 2501. Although the Tucker Act waives federal sovereign immunity and grants this court jurisdiction to hear monetary claims against the government, this court's jurisdiction is expressly limited by 28 U.S.C. § 2501, which prescribes a six-year statute of limitations for claims arising under the Tucker Act's waiver of sovereign immunity. According to 28 U.S.C. § 2501: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." Id. "The six-year statute of limitations set forth in section 2501 is a jurisdictional requirement for a suit in the Court of Federal Claims." John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006), aff'd, 552 U.S. 130 (2008); see also Schnell v. United States, 115 Fed. Cl. 102, 104-05 (2014).

Generally, a claim accrues "'when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Samish Indian Nation v. United States, 419 F.3d at 1369 (quoting Martinez v. United States, 333 F.3d at 1303); see also FloorPro, Inc. v. United States, 680 F.3d 1377, 1381 (Fed. Cir. 2012); Martinez v. United States, 333 F.3d at 1303 ("A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here [in the United States Court of Federal Claims] for his money.'" (emphasis in original) (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 240, 368 F.2d 847, 851 (1966),

motion denied, 184 Ct. Cl. 390, 396 F.2d 977 (1968))); Mildenberger v. United States, 643 F.3d 938, 944-45 (Fed. Cir. 2011); Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988); Eden Isle Marina, Inc. v. United States, 113 Fed. Cl. 372, 481 (2013); Brizuela v. United States, 103 Fed. Cl. 635, 639, aff'd, 492 F. App'x 97 (Fed. Cir. 2012), cert. denied, 568 U.S. 1251 (2013). A Judge of the United States Court of Federal Claims has noted that:

> It is well-established that a claim accrues under Section 2501 "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc), cert. denied, 540 U.S. 1177 (2004) (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)); see also Samish, 419 F.3d at 1369. Because, as noted, this requirement is jurisdictional, plaintiff bears the burden of demonstrating that its claims were timely. See Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998); Entines v. United States, 39 Fed. Cl. 673, 678 (1997), aff'd, 185 F.3d 881 (Fed. Cir.), cert. denied, 526 U.S. 1117 (1999); see also John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1362 (Fed. Cir. 2006) (Newman, J., dissenting); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

Parkwood Assocs. Ltd. P'ship v. United States, 97 Fed. Cl. 809, 813-14 (2011), aff'd, 465 F. App'x 952 (Fed. Cir. 2012); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 209 (2011) (citing Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998)).  Accrual of a claim is "'determined under an objective standard'" and plaintiff does not have to possess actual knowledge of all the relevant facts in order for a cause of action to accrue. FloorPro, Inc. v. United States, 680 F.3d at 1381 (quoting Fallini v. United States, 56 F.3d 1378, 1380 (Fed. Cir. 1995), cert. denied, 517 U.S. 1243 (1996)). Rather, "[a] cause of action against the government has first accrued 'when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence.'" San Carlos Apache Tribe v. United States, 639 F.3d at 1350 (quoting Hopland Band of Pomo Indians v. United States, 855 F.2d at 1577); see also FloorPro, Inc. v. United States, 680 F.3d at 1381 (stating that a plaintiff had "'a complete and present cause of action'" when the plaintiff was aware that "all events necessary to fix the alleged liability of the government for the failure to comply with Modification P00001 had occurred" (quoting Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp., 522 U.S. 192, 201 (1997))); Lynch v. United States, 135 Fed. Cl. 494, 500 (2017) (stating, in a military pay case, that "a claim accrues when the plaintiff becomes aware 'of the existence of his injury and the acts giving rise to his claims'" (quoting Martinez v. United States, 333 F.3d at 1319)); Myers v. United States, 50 Fed. Cl. 674, 683 (2001) (stating, in a military pay case, that "'a cause of action against the government has 'first accrued' only when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence'"

(emphasis in original) (quoting <u>Hopland Band of Pomo Indians v. United States</u>, 855 F.2d at 1577)).[7]

Generally, the relevant courts have held that when "the underlying basis for the suit is the denial of back pay, we have consistently held that the limitations period is established by the date of accrual, which is the date on which the service member was denied the pay to which he claims entitlement." <u>Martinez v. United States</u>, 333 F.3d at 1314 (internal citation omitted); <u>see also</u> <u>Chisolm v. United States</u>, 82 Fed. Cl. 185, 198 (2008) ("In military pay cases, generally, a claim accrues on the date on which the service member was denied the pay to which he claims entitlement." (internal quotation marks omitted)). In <u>Martinez</u>, the appellant alleged that he had suffered monetary losses as a result of his discharge from active duty. <u>See</u> <u>Martinez v. United States</u>, 333 F.3d at 1310. The court, therefore, found that the appellant's "cause of action" accrued on the date of his discharge. <u>Id.</u> The <u>Martinez</u> court also explained that

> the courts have made clear that a Tucker Act claim for back pay accrues all at once at the time of discharge; the claim for back pay is not a "continuing claim" that accrues each time a payment would be due throughout the period that the service member would have remained on active duty.

<u>Id.</u> at 1303 (citing <u>Longhine v. United States</u>, 230 Ct. Cl. 920, 922 (1982); <u>Vincin v. United States</u>, 199 Ct. Cl. 762, 468 F.2d 930, 933 (1972); and <u>Mathis v. United States</u>, 183 Ct. Cl. 145, 391 F.2d 938, 939, <u>vacated</u>, 183 Ct. Cl. 145, 394 F.2d 519 (1968)).

The statute of limitations contained at 28 U.S.C. § 2501, however, can be suspended in limited circumstances. For purposes of 28 U.S.C. § 2501, "accrual of a claim against the United States is suspended . . . until the claimant knew or should have known that the claim existed." <u>Martinez v. United States</u>, 333 F.3d at 1320; <u>see also</u> <u>Ackerman v. United States</u>, 107 Fed. Cl. 612, 617 (2012) ("A claim accrues only if the claimant 'knew or should have known' that the claim existed." (quoting <u>Goodrich v. United States</u>, 434 F.3d 1329, 1333 (Fed. Cir. 2006))). This "accrual suspension" rule is "strictly and narrowly applied: . . . [The plaintiff] must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date.'" <u>Martinez v. United States</u>, 333 F.3d at 1319 (quoting <u>Welcker v. United States</u>, 752 F.2d 1557, 1589 (Fed. Cir. 1985)) (alteration in original); <u>see also</u> <u>Hopland Band of Pomo Indians v. United States</u>, 855 F.2d at 1577 ("[T]he statute of limitations can be tolled where the government fraudulently or

---

[7] In an unpublished Opinion involving a claim alleged to be brought under the Military Pay Act, the United States Court of Appeals for the Federal Circuit stated that "[a] claim against the government generally accrues '["]when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence.["]'" <u>Malcolm v. United States</u>, 690 F. App'x 687, 688-89 (Fed. Cir. 2017) (quoting <u>San Carlos Apache Tribe v. United States</u>, 639 F.3d at 1350 (quoting <u>Hopland Band of Pomo Indians v. United States</u>, 855 F.2d at 1577)).

deliberately conceals material facts relevant to a plaintiff's claim so that the plaintiff was unaware of their existence and could not have discovered the basis of his claim.").

The parties dispute the accrual date of plaintiff's claim for back-pay for time spent on unpaid confinement and unpaid appellate review leave. Defendant asserts:

> Mr. Perez brings two distinct money claims associated with his release from confinement and associated unpaid leave status. First, he contends, he was entitled to "the pay due as a result of his unpaid confinement," citing 10 U.S.C. § 707. Second, he contends he is entitled to pay for "unpaid appellate leave," also citing Section 707. Service members who are required to take "excess" (unpaid) leave awaiting conclusion of their court-martial review and whose court-martial discharges were set aside are entitled to pay accrued while in that status. Both of these claims are subject to <u>Martinez's</u> general accrual rule, as neither are based upon a claim of unlawful discharge; rather, they are based [sic] Mr. Perez's active duty status while on appellate leave.

(internal references omitted). According to defendant, plaintiff's claims for back-pay for time spent on unpaid confinement and unpaid appellate review leave accrued on July 31, 2009, when the Air Force issued GCMO No. 13, because that is "the date on which the Air Force: (1) took final action under the Uniform Code of Military Justice (UCMJ) to dismiss all charges against him; and (2) had not paid him any monies allegedly then due." (internal reference omitted).

Plaintiff asserts that his claim for back-pay for time spent on unpaid confinement and unpaid appellate review leave accrued, at the earliest, if at all, on June 18, 2013, when the Air Force first made "any effort" to "actually discharge plaintiff from active duty" by issuing plaintiff's DD Form 214, albeit with a retroactive discharge date of July 31, 2009 and an incorrect notation that plaintiff's discharge was for "Bad Conduct." Plaintiff claims that, "in a military discharge case, the plaintiff's cause of action for back pay accrues **at the time of the plaintiff's discharge**." (emphasis in original) (citing <u>Martinez v. United States</u>, 333 F.3d at 1303). Plaintiff alleges that he was placed on unpaid confinement between July 2, 2004 and April 15, 2005, and then placed on unpaid appellate review leave, beginning on April 16, 2005, the day after he was released from unpaid confinement, "until at least June 18, 2013," when the Air Force issued plaintiff's Certificate of Release or Discharge from Active Duty DD Form 214.[8]

Defendant's position that plaintiff's claim accrued on July 31, 2009, the date on which the Air Force issued GCMO No. 13, fails. After the Air Force issued its order setting

---

[8] Plaintiff argues, alternatively, that he currently remains on active duty, on unpaid appellate review leave, because he was never properly discharged from the Air Force, given the retroactive and unsigned DD Form 214. In a May 22, 2018 declaration signed by plaintiff and submitted to the court, plaintiff states "I believed I could still be on appellate review leave/active duty status in United States Air Force awaiting a final disposition."

aside plaintiff's conviction and bad-conduct discharge by restoring all his rights and privileges denied by his conviction, the Air Force was required to address plaintiff's restoration status. Based on the record before the court, the Air Force failed to act on plaintiff's status for almost four years, until the Air Force retroactively issued the DD Form 214 on June 18, 2013. The Air Force was required to pay a servicemember in plaintiff's situation within a set amount of time, see 10 U.S.C. § 707(b)(2); see also DODFMR at § 010301.F.2.b, given that the Air Force Court of Criminal Appeals had ordered a new trial, which the convening authority subsequently found to be impractical, as indicated in the July 31, 2009 GCMO No. 13. Theoretically, the Air Force had 180 days from the issuance of the July 31, 2009 GCMO No. 13 to pay plaintiff, with an option to extend the period of time within which to make payment to plaintiff, as discussed below. See 10 U.S.C. § 707(b)(2)(B) ("Payment shall be made within 180 days from the date of the order setting aside or disapproving the sentence by court-martial to a dismissal or a dishonorable or bad-conduct discharge if a rehearing or new trial has been ordered but charges have not been referred to a rehearing or new trial within 120 days from the date of that order."); see also DODFMR at § 010301.F.2.b.2. Before payment can be made, however, the Air Force must exclude from the amount due to the servicemember "the total amount of his income from wages, salaries, tips, other personal service income, unemployment compensation, and public assistance benefits from any Government agency during the period he is deemed to have accrued pay and allowances." 10 U.S.C. § 707(b)(2); see also DODFMR at § 010301.F.2.a. In order for the Air Force to exclude such income, the Air Force generally requests from the servicemember documentation of income received during his or her time on appellate review leave. See 10 U.S.C. § 707(b)(3); see also DODFMR at § 010301.F.2.b.5. Once the information is requested, the servicemember is required to provide to the Air Force in a "timely manner," "at a minimum, copies of all pertinent income tax returns, employer statements of income earned from wages, salaries, tips, and documentation of other personal service income" during the relevant period of time. See DODFMR at § 010301.F.3. If the servicemember does not provide such "requested information" in a "timely manner," the deadline for payment, in plaintiff's case, the 180-day deadline, "shall be extended until 30 days after the date on which the member provides the requested information." 10 U.S.C. § 707(b)(3); see also DODFMR at § 010301.F.2.b.5. In sum, only after the Air Force has taken the final step of computing the amount of pay due to the servicemember can the Air Force then actually pay the servicemember.

Therefore, on July 31, 2009, when the Air Force "dismissed without prejudice" plaintiff's bad-conduct discharge and issued GCMO No. 13, the Air Force had not yet made a final determination of the amount of pay due to plaintiff. Contrary to defendant's position, plaintiff's claim for back-pay could not have accrued on July 31, 2009 because the Air Force still needed to address plaintiff's status, calculate the amounts due to plaintiff, and provide compensation to plaintiff. Moreover, there is no evidence in the record before the court indicating that, on July 31, 2009, plaintiff was aware or should have been aware that the Air Force was not calculating the amount of compensation owed to plaintiff and would not provide compensation to plaintiff. The Air Force is required to follow its own regulations. Although government agencies are presumed to act in accordance with the law, see Peoples v. United States, 101 Fed. Cl. 245, 264 (2011)

(stating that a military branch "is presumed to act in accordance with its regulations"); see also Dodson v. United States, 988 F.2d 1199, 1204 (Fed. Cir.) (stating that "military administrators are presumed to act lawfully and in good faith"), reh'g denied (Fed. Cir. 1993), that presumption can be rebutted. See Doe v. United States, 132 F.3d 1430, 1434 (Fed. Cir. 1997) (stating that the presumption that military officials act in good faith can be rebutted); see also Peterson v. United States, 104 Fed. Cl. 196, 204 (2012).

Following the issuance of the July 31, 2009 GCMO No. 13, the Air Force does not appear to have taken action to provide compensation to plaintiff under 10 U.S.C. § 707(b) or to discharge plaintiff, until it issued the June 18, 2013 DD Form 214 purporting to discharge plaintiff from the Air Force, with a retroactive discharge date of July 31, 2009 and an improper designation of plaintiff's character of service as "bad conduct." In defendant's supplemental brief, defendant acknowledges that "Air Force officials" failed "to address Mr. Perez's status and to request such information" relevant to compensation under 10 U.S.C. § 707(b). In plaintiff's opposition, plaintiff asserts that it is

> undisputed that no final accounting of pay was conducted or delivered to plaintiff at any time, up to and including the date that this Opposition is filed. Finally, it is undisputed that at no time was plaintiff directed, or provided an opportunity to undergo a 'clearing' process prior to June 18, 2013.

Indeed, based on the documents in the record, in a May 18, 2018 letter sent by the Department of Defense to plaintiff, the Department of Defense appears to have considered the plaintiff to be enrolled in the TRICARE health program, which provided "health care benefits" to "active duty, retired and Reserve Service members, as well as authorized family members," until October 20, 2012. Based on the record before the court, after issuing the July 31, 2009 GCMO No. 13, the Air Force failed to take any action consistent with providing plaintiff with compensation which plaintiff was entitled to receive, and the Air Force did not take any action indicating to plaintiff that the Air Force was not going to provide compensation to plaintiff until June 18, 2013, notwithstanding the directives in the July 31, 2009 GCMO No. 13.

On June 18, 2013, the Air Force issued the DD Form 214 attempting to discharge plaintiff from the Air Force retroactively. At that point, on June 18, 2013, when the Air Force attempted retroactively to document its discharge of plaintiff, the government's liability to provide compensation to plaintiff under 10 U.S.C. § 707(b) was fixed, as the Air Force indicated, for the first time, that the Air Force was discharging plaintiff and there was no indication then or thereafter that the Air Force intended to process compensation in accordance within GCMO No. 13 to plaintiff. At that time, June 18, 2013, plaintiff possibly could have become aware that the Air Force was not going to provide plaintiff with any of the awardable compensation the Air Force was required to process in accordance with 10 U.S.C. § 707(b), given that the Air Force had issued a DD Form 214. In plaintiff's opposition, plaintiff asserts that "no discharge certificate, valid or invalid, was delivered to plaintiff," that the "the address on the DD 214 was incorrect and plaintiff did not receive a copy until he requested a digital copy of his military record on or in August 2017," for an unidentified, apparently unrelated reason. Regardless, plaintiff filed his

February 13, 2018 complaint within six years of the Air Force's issuance of the June 18, 2013 DD Form 214.

Defendant's argument that the undersigned's "reasoning" in Walker v. United States, 117 Fed. Cl. 304, aff'd, 587 F. App'x 651 (Fed. Cir. 2014), cert. denied, 136 S. Ct. 409 (2015), "applies here" and "requires dismissal of Mr. Perez's claims, all of which accrued in 2009," is misplaced. In Walker v. United States, the parties did dispute whether a former servicemember's claim for incapacitation pay was barred by the statute of limitations. Walker v. United States, 117 Fed. Cl. at 317. The Walker court stated:

> Ms. Walker improperly attempts to extrapolate a blanket rule from the Martinez case that not only claims for back pay, but other claims as well, such as her claim for incapacitation pay, do not accrue until the date of discharge. In Martinez, the Federal Circuit stated the limitations period was determined by the date of accrual in the back-pay case brought by plaintiff, which was the date on which the service member was denied the pay to which he claimed entitlement. See id. [Martinez v. United States, 333 F.3d at 1314.]
>
> By contrast, Ms. Walker's incapacitation pay claims would have accrued when all the events occurred which were necessary to enable the plaintiff to bring suit, the date of non-payment. On August 14, 2003, Ms. Walker submitted a request for incapacitation pay, and on August 18, 2003, Ms. Walker acknowledged her understanding of, and agreement with, the requirements for requesting incapacitation pay. Ms. Walker was examined by an Army medical professional and found unfit for her military duty for the period from September 4, 2003 through March 4, 2004. Ms. Walker now alleges in this court that she is due "incapacitation pay pursuant to 37 U.S.C. § 204(g)(1) for the period from September 2003 through February 2004." If, as Ms. Walker alleges, she was due incapacitation pay, she would have had to not only file a request for such pay, but also have received an approval of the incapacitation pay. Given plaintiff's stated timeframe for claiming incapacitation pay, even assuming payment a month after a submitted request, at the latest, on April 1, 2004, she should have realized that the alleged incapacitation pay monies had failed to arrive. Therefore, when Ms. Walker became aware, or should have become aware, that she did not receive the incapacitation pay she thought she was due, is when her cause of action for unpaid incapacitation pay began to accrue, and the statute of limitations began to run. In plaintiff's case, it would appear, at the latest, April 1, 2004 was the date Ms. Walker should have become aware, that she did not receive incapacitation pay. As such, pursuant to 28 U.S.C. § 2501, Ms. Walker had six years from April 1, 2004 to bring her claim before this court. Instead, Ms. Walker filed her claim on September 27, 2012, well over two years after the expiration of the six-year statute of limitations period.

Id. at 320 (footnote omitted).

In the above-captioned case, however, there is no evidence currently before the court indicating that plaintiff either had notice, should have been aware, or was aware that the Air Force would not take any of the actions consistent with the Air Force's responsibility to provide compensation under 10 U.S.C. § 707(b) to plaintiff on July 31, 2009, after the Air Force issued GCMO No. 13. Mr. Perez, however, could have become aware that the Air Force was not going to provide compensation pursuant to 10 U.S.C. § 707(b) on June 18, 2013, when the Air Force issued the DD Form 214 purporting to discharge plaintiff from the Air Force, although his uncontroverted statement is that he did not become aware that the DD Form 214 had been issued until August 13, 2017. The unique facts of the above-captioned case, in which plaintiff was confined based on two minor girls' apparently false testimony, which the Air Force subsequently found to be "fabricated," and the Air Force's failure to take any steps to provide compensation to plaintiff after dismissing the claims against plaintiff, differ from the facts in Walker, in which the court found that the servicemember was aware or should have been aware that she had not received "the incapacitation pay she thought she was due." See Walker v. United States, 117 Fed. Cl. at 320. Based on the facts presented in the case brought by Mr. Perez, the court finds that plaintiff's complaint is timely under 28 U.S.C. § 2501.

## II. Plaintiff's request for restoration to active duty.

Although this Opinion primarily addresses the issue of whether plaintiff's complaint was timely filed, plaintiff also argues that the Air Force wrongfully discharged plaintiff "with a Bad Conduct Discharge," as indicated in the June 18, 2013 DD Form 214 and that his records should be corrected. Plaintiff further alleges that he was denied a "20 year retirement;" that his rights to "veteran's benefits and other emoluments of military service" were "materially affected;" and that he should be returned to active duty. Defendant responds that, even if plaintiff's active duty restoration request was within this court's jurisdiction, this court would still lack jurisdiction because plaintiff's enlistment period ended in 2008. According to defendant, servicemembers are "not entitled to relief under the Tucker Act reflecting constructive service beyond the expiration of their enlistment, absent a statutory right to re-enlist."

The court notes that, with respect to plaintiff's request to be returned to active duty, his request is outside the jurisdiction of this court. Which individuals should be in the military is a decision that should be left to the expertise and discretion of the military. See, e.g., Orloff v. Willoughby, 345 U.S. 83, 93 (1953) ("[J]udges are not given the task of running the Army"). The military has the discretion to allow an individual to reenlist. See 10 U.S.C. § 505 (2012) ("The Secretary [of the service branch] concerned may accept a reenlistment in the Regular Army, Regular Navy, Regular Air Force, Regular Marine Corps, or Regular Coast Guard, as the case may be, for a period determined under this subsection." (emphasis added)); see also Craft v. United States, 210 Ct. Cl. 170, 187, 544 F.2d 468, 477 (1976) ("Normally, reenlistment is a matter within the discretion of the Secretary of a given military branch."). Unless an individual can point to a specific statutory or regulatory right to be reenlisted, an individual is not entitled to be reenlisted in the military. See Dodson v. United States, 988 F.2d at 1203-04 (noting that "no one

has a right to enlist or reenlist in the armed forces, unless specially given one by statute or regulation"); see also Maier v. Orr, 754 F.2d 973, 980 (Fed. Cir. 1985) ("No one has an individual right, constitutional or otherwise, to enlist in the armed forces, the composition of those forces being within the purview of the Congress and the military."); Thompson v. United States, 221 Ct. Cl. 983, 983 (1979) ("[W]e have no jurisdiction over claims for refusal of reenlistment absent some special provision of law giving a right to reenlist. Plaintiff has not cited any such special provision. Thus, the petition must be dismissed for lack of jurisdiction."); Harper v. United States, 104 Fed. Cl. 287, 293 (2012) (dismissing plaintiff's request for reinstatement in the Marine Corps in a case in which plaintiff's term of enlistment had expired and plaintiff had not alleged any statutory or regulatory right to reenlistment); Hwuang v. United States, 94 Fed. Cl. 259, 271 (2010) ("[N]o serviceperson has a right to enlist or to reenlist in the armed forces unless specially granted one." (internal quotation marks omitted)), aff'd, 409 F. App'x 348 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2011); Flowers v. United States, 80 Fed. Cl. 201, 217 (2008) ("Unless a statute or regulation confers upon a serviceperson the right to reenlist, 'an enlisted man has no right to reenlist when his previous enlistment period ends . . . .'" (omission in original) (quoting McEniry v. United States, 7 Cl. Ct. 622, 626 (1985))); Thomas v. United States, 42 Fed. Cl. 449, 453 (1998) ("No one has a right to enlist or re-enlist in the armed forces unless specially granted a right by statute or regulation."), aff'd, 217 F.3d 854 (Fed. Cir. 1999). For example, in Craft v. United States, the court ordered the Secretary of the Army to reenlist plaintiff to active duty service, having found that plaintiff had a statutory right to re-enlistment pursuant to 10 U.S.C. § 1211(a)(3), which provided at that time that an enlisted member on the Temporary Retired Disability List "shall . . . be reenlisted" if found fit to perform his or her duties. See Craft v. United States, 210 Ct. Cl. at 186. In contrast, in Dodson v. United States, the United States Court of Appeals for the Federal Circuit did not order that plaintiff be reinstated to active duty service when plaintiff did not invoke any statutory or regulatory right to be reinstated into active duty service, and his enlistment term of service had expired years before. See Dodson v. United States, 988 F.2d at 1208. The Dodson court explained:

> Because no one has a right to enlist or reenlist in the armed forces unless specially granted one, an enlisted serviceman who has been improperly discharged is entitled to recover pay and allowances only to the date on which his term of enlistment would otherwise have expired had he not been so discharged.

Id. The Dodson court noted that "[w]e can however remedy the legally defective process so as to put Dodson into the position that he would have been had the proper procedures been followed at the relevant times." Id. The Dodson court concluded that former staff sergeant Dodson "is entitled to back pay and allowances to May 19, 1985, the date of his proper ETS [expiration of term of service date]," and instructed the United States District Court for the Middle District of Florida to order that the correct enlistment evaluation form be included in Mr. Dodson's official military personnel file, and that if Mr. Dodson sought reenlistment, "the bar to his reenlistment be lifted and his application for reenlistment be considered anew." Id. Although Mr. Perez requests that his "discharge be set aside" and that he be "restored to active duty," plaintiff's enlistment in the Air Force expired in 2008.

Therefore, as in <u>Dodson</u>, this court lacks the authority to reinstate plaintiff into active duty service and dismisses plaintiff's request for restoration to active duty for lack of jurisdiction. <u>See</u> <u>Dodson v. United States</u>, 988 F.2d at 1208; <u>see</u> <u>also</u> <u>Harper v. United States</u>, 104 Fed. Cl. at 293; <u>Thompson v. United States</u>, 221 Ct. Cl. at 983.

## CONCLUSION

Defendant's motion to dismiss plaintiff's claims as time-barred by 28 U.S.C. § 2501 is **DENIED**. The court, however, finds that plaintiff's request for active duty restoration falls outside this court's jurisdiction. The court, therefore, **GRANTS IN PART** defendant's motion to dismiss as to plaintiff's active duty restoration request. The case is remanded to the Air Force for initial determinations as to the amount of back-pay, if any, and other monies due and owing to plaintiff.

**IT IS SO ORDERED.**

<u>s/Marian Blank Horn</u>
**MARIAN BLANK HORN**
**Judge**

23